IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARBARA THOMAS, et al., | § | |
| Plaintiffs, | § § § | |
| v. | § | CIVIL ACTION NO. H-95-0237 |
| GEORGE W. BUSH, in his official capacity as Governor of the State of Texas, et al., | § § § § | |
| Defendants. | § | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

MAR 29 1995

Michael N. Milby, Clerk

## MEMORANDUM AND ORDER

Pending before the court is defendants' Motion to Dismiss for Improper Venue and for More Definite Statement (Docket Entry No. 3).[1] Plaintiffs commenced this action on January 25, 1995, to challenge the legality of the most recently enacted Texas Senate and House of Representatives redistricting plans. Defendants, George W. Bush, Bob Bullock, Dan Morales, Pete Laney, and Tony Garza, who are being sued only in their official capacities as Governor, Lieutenant Governor, Attorney General, Speaker of the House of Representatives, and Secretary of State of the State of Texas, argue that the action should be dismissed or, in the alternative, transferred to the Austin Division of the Western District of Texas because this court is an improper venue.

---

[1] Though defendants also move to stay all proceedings in the action (Docket Entry No. 9) and to dismiss the claims against the Governor (Docket Entry No. 8), neither of those motions is yet ripe for consideration.

## I. Venue

Because subject matter jurisdiction over this action is predicated upon the presence of federal questions, 28 U.S.C. § 1391(b) provides three tests to determine whether venue is proper in this district. Section 1391(b) states that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Plaintiffs argue that venue is proper in this district under the first two of these tests.

### A. Does any defendant "reside" in the Southern District?

For venue purposes all defendants are residents of Travis County, Texas, in the Austin Division of the Western District of Texas.[2] Plaintiffs argue, however, that defendants also "reside"

---

[2] 28 U.S.C. § 124(d)(1); see, e.g., Florida Nursing Home Ass'n v. Page, 616 F.2d 1355, 1360 (5th Cir.), cert. denied sub nom. Taylor v. Golden Isles Convalescent Center, Inc., 101 S.Ct. 211 (1980), judgment reversed on unrelated issue sub nom. Florida Dept. of Health and Rehabilitative Services, 101 S.Ct. 1032 (1981)("The general rule in suits against public officials is that a defendant's residence for venue purpose is the district where he performs his official duties"); O'Neill v. Battisti, 472 F.2d 789, 791 (6th Cir. 1972), cert. denied sub nom. Heitzler v. O'Neill, 93 S.Ct. 2142 (1973)(issuing mandamus to vacate temporary restraining order and to dismiss action against the Justices of the Ohio Supreme Court because "the official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of the State Government.").

in the Southern District, for "[i]t has been held . . . that a state agency or official does not necessarily have a single residence." <u>Florida Nursing Home Ass'n v. Page</u>, 616 F.2d at 1360. Plaintiffs urge the court to use the criteria adopted in <u>Cheeseman v. Carey</u>, 485 F. Supp. 203, 207 (S.D.N.Y.), <u>remanded for dismissal as moot without consideration of venue issue</u>, 623 F.2d 1387 (2d Cir. 1980)("Whether a state defendant has a second official residence would seem to turn on three factors: (1) the defendant's presence in the district in which the plaintiff has sued; (2) the extent of defendant's official activities in the district; and (3) the relationship of the defendant's activities within the district to the cause of action asserted."). Because these criteria are not inconsistent with the Fifth Circuit's analysis in <u>Florida Nursing Home Ass'n v. Page</u>, 616 F.2d at 1360 ("Here, Florida DHRS, though headquartered in the Northern District of Florida, maintains a large office in the Southern District and much of its business is transacted from that office."), the court will apply them.

Plaintiffs argue that defendants reside in Harris County, Texas, because they are officials of the executive and legislative branches of the state government and because each of these branches maintains a variety of offices in Harris County. Plaintiffs also argue that defendants regularly litigate in federal courts outside of Travis County, Texas, and also that defendants would not be greatly inconvenienced by having to defend this lawsuit here. Just as in <u>Cheeseman</u>, however, plaintiffs' arguments fail to demonstrate that the defendants' activities in this district bear any

c:\wp50\files\m&o\95-0237                              -3-

relationship to plaintiffs' causes of action, which attack the constitutionality of legislation affecting the apportionment of voting rights throughout Texas. Although the Attorney General maintains offices in Harris County from which consumer protection, child support, and other laws are enforced, plaintiffs have presented no evidence that the Attorney General enforces election laws or exercises policymaking functions from any office in this district. Similarly, plaintiffs offer no evidence that any other defendant maintains an office in this district from which he regularly conducts activities that are substantively related to the plaintiffs' causes of action.[3] Accordingly, the court concludes that none of the defendants reside within this district for purposes of § 1391(b)(1) even under plaintiffs' three-factored test.

B.  Is the Southern District one in which "a substantial part of the events or omissions giving rise to the claim occurred?"

In <u>Florida Nursing Home Ass'n v. Page</u> the Fifth Circuit held that the clauses of § 1391 are to be read as alternatives.[4] As to the second test the court stated that "the court should not oppose the plaintiff's choice of venue if the activities that transpired

---

[3] Plaintiffs' references to defendants' general participation in litigation and their greater access to resources are unpersuasive. Neither establishes the vital link between the activities conducted within this district and the plaintiffs' causes of action.

[4] 616 F.2d at 1360-61 ("[T]he venue statute makes it clear that the residence of defendants does not provide the only basis for venue. Venue is also proper in the district where the claim arose.").

in the district where suit is brought were not insubstantial and the forum is a convenient one balancing the equities and fairness to each party." 616 F.2d at 1361 (upholding venue in action seeking to set aside HEW regulation delaying timetable for payments in district where payments allegedly presently due would have been made). The Eighth Circuit recently opined that this pre-amendment articulation of the venue test is fully compatible with the statute as amended. Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 n.1 (8th Cir. 1994).

To support venue in this district the events or omissions occurring within the district must be substantial. "In assessing whether events or omissions giving rise to claims are substantial it is necessary to look at the nature of the dispute."[5] The cases cited by plaintiffs in which courts found that an action for trademark violation accrues where the effects of confusion are likely to occur,[6] are unhelpful in the review of an action seeking to overturn a legislative reapportionment of voting districts.[7]

---

[5] Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994)(holding "that most, if not all, of the significant events occurred in Michigan" where the contract was executed and performed in Michigan, and where the alleged unauthorized use of the trademarks at issue occurred in Michigan even though the results of certain omissions, e.g., the "failure to return various materials and failure to remit payments" were felt most acutely in Pennsylvania).

[6] See, e.g., Sidco Industries, Inc. v. Wimar Tahoe Corp., 768 F. Supp. 1343, 1346 (D. Or. 1991); Radical Products, Inc. v. Sundays Distributing, 821 F. Supp. 648, 649-50 (W.D. Wash. 1992); Library Publications, Inc. v. Heartland Samplers, Inc., 825 F. Supp. 701, 704-05 (E.D. Pa. 1993).

[7] Plaintiffs' reliance upon Farmland Dairies v. McGuire, 771 F. Supp. 80 (S.D.N.Y. 1991), though more to the point, is nonetheless distinguishable. The Farmland Dairies plaintiffs were out-of-
(continued...)

In this case plaintiffs allege causes of action relating solely to the actions of defendants in enacting redistricting legislation. The closest factual parallel to the instant case is provided by Shayer v. Kirkpatrick, 541 F. Supp. 922, 925 (W.D. Mo.), judgment aff'd without consideration of the venue holding sub nom. Schatzler v. Kirkpatrick, 102 S.Ct. 2228 (1982). After convening two three-judge courts composed of the same judges to hear actions commenced in both the Eastern and Western Districts of Missouri, the court explained why transfer and consolidation in the Western District was appropriate under the pre-amendment version of § 1391(b)(2):

> A claim arises where the complained-of acts or omissions of a defendant occur. The defendant, Honorable James C. Kirkpatrick, Secretary of State, has his offices in the Western District (Jefferson City, Missouri), and his actions relating to elections would occur in the Western District. Therefore, a claim based on his conduct would accrue where his election duties are performed, i.e., the Western District of Missouri.

Id. Similarly, in this case all of the actions taken by the defendants that allegedly give rise to plaintiffs' causes of action occurred where defendants' legislative and election-related duties were performed.

---

[7](...continued)
state milk producers who sought injunctive and declaratory relief against implementation of a regulation imposing a tariff on importation of certain types of milk. The court held that a suit to prevent the agency from collecting the tariff could be maintained wherever the actions triggering liability would take place. Id. at 82 ("It is 'distribution' of milk in the state of New York which triggers compensatory payments under the challenged statute and regulations. Plaintiffs have demonstrated that their New York milk distribution occurs primarily in this district. Thus a substantial part of the events giving rise to plaintiff's claims occurs in this district.").

Plaintiffs argue that because the 1990 amendment to § 1391(b)(2) established that venue could be proper in more than one judicial district, "provided that 'substantial' activities occurred in multiple judicial districts,"[8] the court must also determine if defendants' actions caused substantial events to occur in this district. Plaintiffs direct the court's attention to cases approving venue in a location remote from the situs of law or policymaking upon a finding that the effects of that legislation are profoundly felt in the forum district.[9] The court declines to extend the results of those cases to the instant case because even a casual perusal of the challenged legislation[10] as well as plaintiffs' own evidence[11] reveals that the effects of the redistricting

---

[8] Database America, Inc. v. Bellsouth Advertising & Publishing Corp., 825 F. Supp. 1216, 1224 (D.N.J. 1993).

[9] See Sharif by Salahuddin v. New York State Education Dept., 709 F. Supp. 345, 358-59 (S.D.N.Y. 1989)(finding that the claim arose in New York City as well as Albany where "[f]emale students attending New York City schools are harmed more than elsewhere by the [defendant's] exclusive reliance on [Scholastic Aptitude Test] scores . . . than their female counterparts throughout the state."); Cheeseman v. Carey, 485 F. Supp. at 212-13 (upholding venue in New York City instead of Albany, where policymaking defendants resided, because half of plaintiff class resided in New York City and the challenged pay reduction activities germinated from a strike that had its roots in the institutions within New York City); Scott v. United States Dept. of Justice, No. 94-622-CIV-T-23C (S.D. Fla. Jan. 9, 1995)(upholding venue in Tampa over action challenging a single Florida Senate voting district brought by plaintiffs who reside in that district and are peculiarly affected by the redistricting legislation).

[10] House of Representative districts were created by H.B.1, 72nd Leg., 2nd C.S., ch. 7, Aug. 29, 1991. Senate districts were created by S.B.1, 72nd Leg., 3rd C.S., ch. 1, Jan. 8, 1992.

[11] "During the redistricting process . . . the Senate focused on Voting Rights Act concerns in affected [voting] districts
(continued...)

legislation challenged in this case will be "profoundly felt" in practically every voting district throughout the State of Texas.[12] Plaintiffs reside in three of the four federal judicial districts in the state and are separated, in some cases, by nearly 800 miles. Paragraphs 24, 25, and 26 of plaintiffs' First Amended Complaint (Docket Entry No. 5) allege that defendants' redistricting plan, as effectuated pursuant to the Texas Election Code, unconstitutionally results in districts so small that voters are deprived of the secrecy of their ballots. Paragraph 27 charges that the large numbers of small voting districts created by the current redistricting legislation results in confusion and an intolerable risk of mistakes. Section 1391(b)(2) would lose all meaning if the court were to find that defendants' actions leading to enactment of legislation affecting so many voting districts in the state are substantial events or omissions giving rise to a cause of action in every one of those districts.

Because plaintiffs' challenge to the constitutionality of the redistricting legislation attacks only the official conduct of defendants and because the legislation's effects are felt throughout

---

[11](...continued)
throughout Texas." (Narrative of Voting Rights Act Considerations in Affected Districts and Comparison to Federal Court Plan S567, attached as Exhibit C to plaintiffs' Response and Brief in Opposition to Defendants' Motion to Dismiss for Improper Venue, Docket Entry No. 4, at 1st unnumbered page (emphasis added)).

[12] Cf. Cheeseman, 485 F. Supp. at 212 ("Furthermore, the Albany decisionmakers were not merely initiating a policy which had an impact in this district.").

the state of Texas, the court is unable to conclude that a substantial part of the events or the omissions giving rise to plaintiffs' causes of action occurred in this district. Because neither § 1391(b)(1) nor (b)(2) provides a basis for venue, the court concludes that venue is improper in this district.

## II. Transfer as Opposed to Dismissal

The conclusion that venue is improper in this district does not mandate dismissal of this action. 28 U.S.C. § 1406(a) provides that "[t]he district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In Goldlawr, Inc. v. Heiman, 82 S.Ct. 913, 916 (1962), the Supreme Court stated that Congress enacted § 1406 as part of a general plan to remove procedural impediments to "an expeditious and orderly adjudication of cases and controversies." The court finds, based upon facts presented in the petition, that jurisdiction would be proper in the United States District Court for the Western District of Texas, Austin Division. The court also finds that it would be in the interest of justice to transfer this case instead of dismissing it. The court is persuaded that forcing plaintiffs to refile this action in a court that could properly exercise venue over their claims would merely delay their right to a meaningful opportunity to adjudicate their claims.

c:\wp50\files\m&o\95-0237

-9-

## III. Conclusion

Defendants' motion seeking dismissal or transfer of this claim for improper venue is **GRANTED** in part, and this action is **TRANSFERRED** to the Austin Division of the United States District Court for the Western District of Texas.

**SIGNED** at Houston, Texas, on this 28th day of March, 1995.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE